### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| YORIE VON KAHL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 18-cv-1245-JES |
| | ) | |
| STEVE KALLIS, Warden | ) | |
| | ) | |
| Respondent. | ) | |

## <u>ORDER AND OPINION</u>

Now before the Court is Petitioner Yorie Von Kahl's *pro se* Motion to Amend or Alter Judgment Pursuant to Federal Rule of Civil Procedure 59(e) (Doc. 17). After filing his *pro se* Rule 59(e) Motion, Petitioner retained counsel, who has filed a Memorandum in Support of Petitioner's *pro se* Motion (Doc. 21). For the reasons set forth below, Petitioner Yorie Von Kahl's Rule 59(e) Motion (Doc. 17) is GRANTED IN PART on the ground that the additional arguments presented in his *pro se* Reply should have been construed as a motion to amend and the denial of these claims more thoroughly addressed. The remaining grounds in his Rule 59(e) Motion are DENIED. The Court finds that Petitioner is still not entitled to relief on the additional claims raised in his Reply. Accordingly, the Judgment is VACATED, and the Clerk is DIRECTED to enter an Amended Judgment DENYING both Petitioner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 1) and what the Court now construes as Petitioner's Motion to Amend contained within his Reply (Doc. 14-1).

### BACKGROUND

In July 2018, Petitioner filed a Petition under 28 U.S.C. § 2241 (Doc. 1), arguing that the Bureau of Prisons ("BOP") had illegally altered his mandatory parole release date by adding ten

years, and that he was entitled to immediate release. While the relevant background was included in the Court's January 2019 Order (Doc. 15) denying the Petition, for convenience, the Court will restate it here. Petitioner is currently serving his sentence imposed on June 2, 1983, in Case No. C3-83-16-03 in the United States District Court for the District of North Dakota. The Judgment ordered:

> LIFE on Counts 1 & 2 to run CONCURRENTLY; TEN (10) YEARS on Counts 5,6,7 and 8 to run CONCURRENTLY but to run CONSECUTIVELY to the life sentence on Counts 1 and 2; FIVE (5) YEARS on Count 9 to run CONSECUTIVELY to the life sentence imposed on Counts 1 and 2 and the ten year sentence imposed on Counts 5,6,7 and 8; FIVE (5) YEARS on Count 11 to run CONCURRENTLY with the sentence imposed on Counts 1, 2, 5, 6, 7, 8, and 9.

*See* Judgment and Probation/ Commitment Order, Resp. App., 33 (Doc 9-2), Pet. at 13 (Doc. 1)). Petitioner was sentenced pursuant to 18 U.S.C. § 4205(b)(2), which provides for release on parole "… at such time as the Commission may determine." *Id.*

Petitioner's initial parole hearing was on June 19, 1984. *See,* Pet. at 45 (Doc. 1); Resp. App. 7-9 (Doc. 9-2). A Notice of Action ("NOA"), dated July 20, 1984, continued him to a 10-year reconsideration hearing in June 1995. *Id.* The NOA further explained that Petitioner had only been in custody for 17 months, that his offense behavior was rated Category 8 because it involved murder, and that his parole guideline was 100+ months' imprisonment. *Id.*

On June 18, 1986, Petitioner received a statutory interim hearing. *See* Pet. at 49-50 (Doc. 1); Resp. App. 10-13 (Doc. 9-2). At that time, the BOP had calculated his two-thirds or mandatory parole release date under 18 U.S.C. § 4206(d) to be February 12, 2013. *Id.* ("On his life plus 15 year sentence, Petitioner can serve at most 30 years which the Bureau calculates to be the two-thirds point of his aggregate term."). The hearing panel recommended that he be continued to a 15-year reconsideration hearing in June 2001; the Parole Commission adopted the

recommendation, and Petitioner was advised of the decision by a Notice of Action dated July 17, 1986. *Id.*

Petitioner also received statutory interim hearings in 1988, 1990, and 1992. *See* Resp. App. 15-26 (Doc. 9-2). Following each hearing, the Parole Commission made no change in its decision to continue Petitioner to the 15-year reconsideration hearing in June 2001 and no change in its calculation of the two-thirds or statutory mandatory release date under 18 U.S.C. § 4206(d). *Id.* In 1993, Petitioner appealed the Parole Commission's decision. Resp. App. 27-29 (Doc. 9-2). By Notice of Action dated July 28, 1993, the Parole Commission affirmed the previous decision. *Id.* On April 17, 1995, Petitioner received another statutory interim hearing, after which the Parole Commission made no change to the previous decision. Resp. App. 30-31 (Doc. 9-2). Respondent states that beginning in 1997, Petitioner waived his statutory interim hearing, and he has continued to waive those hearings through the present. Resp. at 3 (Doc. 9). In Reply, Petitioner disputes that his hearings have been voluntarily waived, but argues that he has been "forced" to waive them after the Parole Commission has "refused" to provide him with needed records. Reply at 32 (Doc. 14-1).

On July 7, 1994, Petitioner became aware that the BOP had recalculated his mandatory release date pursuant to 18 U.S.C. § 4206(d) as February 13, 2023. Pet. at. 4-5 (Doc. 1). Petitioner has repeatedly appealed this action within the BOP. *Id.* Despite this recalculation by the BOP, a "Federal 15 year Reconsideration Hearing Prehearing Assessment," created on May 4, 2002, by a reviewer in the Parole Commission, again stated that the two-thirds or mandatory release date was February 12, 2013. *See* Pet. at 22 (Doc. 1).

Petitioner filed this petition under 28 U.S.C. § 2241 (Doc. 1), arguing that the BOP illegally altered his mandatory parole release date in 1994, adding ten years to his mandatory

release date. Petitioner argues that this calculation is incorrect, that the BOP had no statutory authority to change this date, and that the BOP effectively usurped the powers of the Parole Commission. Respondent filed a response (Doc. 9). Petitioner filed a timey Reply (Doc. 14-1), which raised four additional grounds of relief: (1) "the BOP's 7/19/2018 Sentencing Monitoring Independent Computation Monitoring Data Printout shows Petitioner's Statutory Release Date as December 22, 2009 and his imprisonment is unlawful," *Id.* 36-41; (2) the Parole Commission's "August 1984 Amendments to 28 C.F.R. §§ 2.12 and 2.14 violate the Constitution's Ex Post Facto Clause as applied to Petitioner on and since July 17, 1986, and all [Parole Commission Notice of Actions] since then are void and Petitioner's imprisonment unlawful," *Id* at 41-49; (3) the BOP's retroactive application of 18 U.S.C. § 3585(b) and [Program Statement] 5880.30 to add ten years to Petitioner's Mandatory Release Date" violates due process and does not justify Petitioner's imprisonment, *Id.* at 50-55; and (4) the BOP's retroactive application of § 3585(b) and Program Statement 5880.30 to recalculate his mandatory release date was an *ex post facto* violation, *Id.* at 55-57. His reply brief also included an explanation of why he believes his criminal judgment was obtained by fraud and collusion. *Id.* at 5-7.

In January 2019, the Court denied Petitioner's Petition, finding that the BOP's calculation of the mandatory release date under§ 4206(d) was correct, and that it was permissible to correct the mandatory release date. Order (Doc. 15). Moreover, the Court found that despite the term "mandatory release date," Petitioner was not entitled to release under § 4206(d) until the Parole Commission conducts a hearing and determines that Petitioner is eligible for release. *Id.* Accordingly, the Court denied relief.

Petitioner promptly filed a *pro se* Motion pursuant to Fed. R. Civ. P. 59(e) (Doc. 17), listing the following six errors that he alleges the Court made in its ruling:

1. The judgment has been obtained by collusion with a biased judge and a fraud on the Court

2. The Court grossly misapprehended Petitioner's core claim

3. The court misconstrued and misapplied 18 U.S.C. § 4206(d) which governs petitioner's mandatory parole release date

4. The court misconstrued and misapplied 18 U.S.C. § 4163 which governs petitioner's mandatory good time credit release date

5. The court manifestly erred by summarily rejecting amended grounds advanced by petitioner in his traverse compelled by issues first raised in respondent's response

6. The court manifestly erred by the wholesale disregard, misapplication and failure to recognize and apply controlling supreme court and circuit court precedent to a decisive issue

Rule 59(e) Mot. at 1-2 (Doc. 17).

After filing his Rule 59(e) Motion, Petitioner obtained counsel. Counsel filed a Memorandum in Support of the Rule 59(e) Motion (Doc. 21), intended to "crystallize" but not "displace" Petitioner's *pro se* Rule 59(e) Motion. In this Memorandum, Petitioner's counsel argues that Petitioner is entitled to immediate release because his statutory release date was listed as "12-22-2009" on BOP's Sentencing Computation document, because his two-thirds release date was listed as "10-15-2009" on BOP's Sentencing Computation document, and/or because his two-thirds sentence should be calculated as 30 years. The Memorandum also argues that while these issues were not brought up until his reply, the Court should address these issues now because Petitioner was proceeding *pro se* and his pleadings should be construed liberally. Pet. Memo. at 3, n.2 (Doc. 21). Respondent has filed his response (Doc. 22). This Order follows.

## DISCUSSION

Petitioner has timely filed a Motion to Alter or Amend Judgment Pursuant to Fed. R. Civ. P. 59(e). "Courts may grant Rule 59(e) motions to alter or amend the judgment if the movant

presents newly discovered evidence that was not available at the time of [the decision] or if the movant points to evidence in the record that clearly establishes a manifest error of law or fact." *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012) (internal citation omitted). This enables courts to correct their own errors an avoid unnecessary appeals. *Id.* However, Rule 59(e) motions should not be used "to 'rehash' previously rejected arguments." *Vesely v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014).

Here, the Court finds that most of Petitioner's arguments are meritless and do not show a manifest error of law or fact. However, the Court does agree that it should have construed Petitioner's additional grounds in his Reply brief as a motion to amend his Petition. *See Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594 (1972) (holding that courts should liberally construe *pro se* pleadings as a matter of course). While the Court still included a brief explanation for dismissing Petitioner's additional grounds, the Court will further expand on its reasoning herein. However, even construing Petitioner's *pro se* Reply as a motion to amend, the Court still finds that he is not entitled to relief and must deny his Petition.

The Court also notes that, arguably, now that Petitioner has obtained counsel and counsel has filed his Memorandum in Support, Petitioner's *pro se* arguments are no longer properly before the Court. *See United States v. Traeger*, 289 F.3d 461, 471 (7th Cir. 2002) ("Once Traeger was represented by counsel, he was not entitled to have the district court consider his previous pro se motion."). Nevertheless, the Court will address both the arguments clarified in counsel's Memorandum in Support as well as the additional arguments presented in Petitioner's *pro se* Rule 59(e) Motion.

**A. The Incorrect Dates Listed on the BOP's Independent Sentence Calculation Do Not Entitle Petitioner to Relief.**

In the Memorandum in Support, Petitioner, through counsel, argues that he is entitled to immediate release because his statutory release date is listed as "12-22-2009," and/or because his two-thirds release date is listed as "10-15-2009." Petitioner's *pro se* Rule 59(e) Motion also raised these claims as his fourth claim of error, and his *pro se* Reply included these claims as amended grounds. The Court finds that both grounds are meritless.

Petitioner first argues that he should have been released on December 22, 2009, because "12-22-2009 is listed as his Statutory Release Date on the BOP's Independent Sentence Calculation that Respondent submitted with his initial response." Pet. Memo. (Doc. 21) (referring to the document in Resp. App. 42 (Doc. 9-2)). As Petitioner notes, BOP Program Statement 5880.30 explains that:

> The SRD [Statutory Release Date] represents the EFT [Expires Full Term date] less any SGT/EGT [statutory good time/ extra good time] adjustments for the term in question. In the case of aggregate terms it may represent the SRD of a term standing alone (calculated as though no other sentence was in operation), and it may be used to establish a starting date from which to calculate a 2/3 Date for another term. It is also used to compare the SRD of a parolable term with the 2/3 Date of the same term. An inmate may not receive a 2/3 Release after the SRD of the same term has been reached since 18 USC § 4163 requires that the ". . . prisoner shall [emphasis added] be released at the expiration of his term of sentence less the time deducted for good conduct." Because of this language in § 4163, a 2/3 Release after an SRD becomes a moot point.

BOP Program Statement 5880.30, Sentence Computation Manual ("Old Law" Pre-CCCA 1984) at 221, available online at https://www.bop.gov/policy/progstat/5880_030.pdf. When a prisoner reaches his statutory release date, he is entitled to release. *See* 18 U.S.C. § 4163.

However, Petitioner does not and cannot have an actual statutory release date, as he was sentenced to life in prison. As explained in the manual excerpt above, a statutory release date is

the "Expires Full Term Date" or "EFT" less any statutory good time or extra good time adjustments. Pursuant to 18 U.S.C. § 4161, prisoners are entitled to good time if they are "confined in a penal or correctional institution for a definite term *other than for life*." 18 U.S.C. § 4161 (emphasis added). Here, Petitioner's sentence is life imprisonment, followed by consecutive sentences totaling 15 years. Because of his life sentence, he is not able to earn good time credits under § 4161. Moreover, there is no possible date that can be computed to say when he will have reached the full term of his *life* sentence. As Petitioner's term of imprisonment does not have an "expiration" date, 18 U.S.C. § 4163 does not apply.

The Court does understand Petitioner's confusion with the computation sheet. Respondent has explained that the Independent Sentence Calculation is not an official sentence computation, "but rather a method used to "double check" the math on old law sentences." Resp. to Mot. at 2 (Doc. 22). The form used a sentence of 40 years as the "term in effect," and not Petitioner's actual sentence of life plus 15 years. *See* Resp. App. 42 (Doc. 9-2). Essentially, Respondent used this form to double-check the mandatory release date given Petitioner's sentence start date, his jail credit, and that Petitioner would need to serve 40 years. As Respondent explains, "the program automatically populated the statutory release date, two-thirds date, and full-term date for that 40-year sentence rather than Petitioner's actual sentence." Resp. to Mot. at 2 (Doc. 22). While this "double-checking" method seems to be less than ideal given the misleading information it produces, it cannot make Petitioner have a statutory release date when he is not entitled to one.

Petitioner's second argument must be denied for similar reasons. Petitioner again points to the Independent Sentence Computation report filed with the Respondent's response, which includes a line reading "2/3 or 30 YR DT: 10-15-2009." Petitioner does not provide any law to

explain why this date would be his two-thirds date, but merely points to the date listed on the report. As Respondent explained, this number was auto-populated when 40 years was entered as the full-term sentence. Again, the report gives quite misleading information, and it is certainly not an ideal way to double-check the date in this context. However, again, this misleading report does not make Petitioner's two-thirds date October 15, 2009, when it is not. Accordingly, these claims are denied as meritless.

## B. The Court Did Not Error in its Finding That Petitioner Must Serve 40 Years Before Reaching his Mandatory Release Date.

Petitioner's counsel also argues in the Memorandum in Support that the Court errored in finding that he needs to serve 40 years before his mandatory release date under § 4206(d) applies. Pursuant to 18 U.S.C. § 4206(d):

> Any prisoner serving a sentence of five years or longer who is not earlier released under this section or any other applicable provision of law, shall be released on parole after having served two-thirds of each consecutive term or terms, or after having served thirty years of each consecutive term or terms of more than forty-five years including any life term, whichever is earlier. Provided however, that the Parole Commission shall not release such prisoner if it determines that he has seriously or frequently violated institution rules and regulations or that there is a reasonable probability that he will commit any Federal, State or local crime.

*Id.* The statute creates a presumption of release upon reaching the mandatory release date, but a prisoner still must have a hearing before the Parole Commission to determine if release is appropriate. *See, e.g., Walker v. Adams*, 151 F.3d 1034 (7th Cir. 1998); *Bruscino v. True*, 708 Fed. Appx. 930, 935 (10th Cir. 2017) (collecting cases). *See also Dufur v. U.S. Parole Comm'n*, 314 F. Supp. 3d 10, 19 (D.D.C. 2018) ("Those caveats mean that "mandatory" parole is not really mandatory.").

Here, Petitioner was sentenced to a life sentence followed by a consecutive 10-year sentence, and a consecutive 5-year sentence. Petitioner argues that the "or" in the statute must be

read in the disjunctive, such that if *any* of a Petitioner's consecutive sentences is over 45 years, a 30-year cap applies. This reading, however, disregards the language in the statute that requires the calculation to take into account "each consecutive term or terms" and makes Petitioner's additional consecutive sentences of 10 years imprisonment and 5 years imprisonment not factor into the calculation of his mandatory release date at all.

Moreover, courts across the country have also found that a prisoner subject to § 4206(d) must serve either 2/3 or 30 years for *each* individual consecutive sentence. *See, e.g., Hackley v. Bledsoe*, 350 Fed. Appx. 599, 602 (3d Cir. Oct. 29, 2009) (holding that a prisoner sentenced to a term of life imprisonment and three consecutive terms of 10 years imprisonment, was required to serve 2/3 or 30 years of each consecutive component, or 50 years); *Shaw v. Young*, No. 5:16-CV-00033, 2018 WL 3081005, *3 (E.D. Tex. June 22, 2018) (relying on the legislative history to find that a prisoner must serve 2/3 or 30 years of each component of his sentence and noting that "[t]o hold otherwise would make Petitioner's consecutive term-of-year sentences irrelevant to the calculation of his mandatory release date"); *Amaro v. Rios*, No. 11-CV-234, 2014 WL 467130 (E.D. Cal. Feb. 5, 2014) (holding that a prisoner with four consecutive life sentences, must serve 30 years on each sentence before reaching his mandatory release date); *Jorgenson v. O'Brien*, No. 5:11CV174, 2012 WL 1565292 (N.D. W.Va. Mar. 19, 2012). Petitioner cites to *Dunne v. Langford*, No. 15-CV-549, 2017 WL 132109 (E.D. Cal. Jan. 13, 2017), for support, but that case does not reach a contrary result. Rather, that case held that a prisoner with multiple consecutive sentences of less than 45 years could not aggregate his sentences such that he would be subject to a 30-year cap, but instead must serve 2/3 of each consecutive sentence. *Id.* at *4. Like here, that Court held that *each* consecutive component of a prisoner's sentence must be

included in the calculation. Accordingly, the Court finds that it did not error in finding that Petitioner must serve 40 years before reaching his mandatory release date.

The Court also notes that this argument is largely duplicative of Petitioner's third claim of error in his *pro se* Rule 59(e) Motion, and the Court denies that claim for the same reason as above. Additionally, Petitioner's second claim of error is that "the Court grossly misapprehended Petitioner's core claim." *See* Rule 59(e) Mot. at 12-13 (Doc. 17). Petitioner argues that his primary argument was not that the BOP could not change his mandatory release date, but rather that the BOP incorrectly calculated the mandatory release date as 40 years. However, regardless of which argument the Court found to be Petitioner's "primary" argument, the Court did address what the proper calculation should be and found that 40 years was the correct calculation. Accordingly, the Court finds that there has been no manifest error of law or fact with regard to the characterization of Plaintiff's claims.

## C. Petitioner's Claims of Fraud on the Court Are Not Cognizable under 28 U.S.C. § 2241.

In Petitioner's *pro se* Rule 59(e) Motion, he argues that "the judgment has been obtained by collusion with a biased judge and a fraud on the Court." *Id.* at 6. In Petitioner's reply, he had taken issue with Respondent's description of the facts underlying Petitioner's criminal case. Petitioner's reply also included a lengthy description of why he believed his entire criminal proceeding was based on fraud and that the district judge was biased. Reply at 5-7 (Doc. 14-1). As the facts underlying his criminal case did not impact his mandatory release date, the Court elected to not resolve the underlying irrelevant factual dispute in its January Order. Now, Petitioner argues that this Court committed error by relying on the criminal judgment which was

allegedly "obtained by collusion with a biased judge and a fraud on the Court." Rule 59(e) Mot. at 6-12 (Doc. 17).

If Petitioner intended to bring an amended claim with his allegations of fraud, then it is dismissed with prejudice pursuant to 28 U.S.C. § 2255(e). Such allegations attack his sentence and conviction itself, not the calculation of his sentence. Generally, federal prisoners who seek to collaterally attack their conviction or sentence must proceed by way of motion under 28 U.S.C. § 2255, the so-called "federal prisoner's substitute for habeas corpus." *Camacho v. English*, 16-3509, 2017 WL 4330368, at *1 (7th Cir. Aug. 22, 2017) (*quoting Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012)). The exception to this rule is found in § 2255 itself: a federal prisoner may petition under § 2241 if the remedy under § 2255 "is inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). Under the "escape hatch" of § 2255(e), "[a] federal prisoner should be permitted to seek habeas corpus only if he had no reasonable opportunity to obtain earlier judicial correction of a fundamental defect in his conviction or sentence because the law changed after his first 2255 motion." *In re Davenport*, 147 F.3d 605, 611 (7th Cir. 1998). Thus, the Seventh Circuit has held that "alternative relief under § 2241 is available only in limited circumstances: specifically, only upon showing "(1) that he relies on 'not a constitutional case, but a statutory-interpretation case, so [that he] could not have invoked it by means of a second or successive section 2255 motion,' (2) that the new rule applies retroactively to cases on collateral review and could not have been invoked in his earlier proceeding, and (3) that the error is 'grave enough ... to be deemed a miscarriage of justice corrigible therefore in a habeas corpus proceeding,' such as one resulting in 'a conviction for a crime of which he was innocent.'" *Montana v. Cross*, 829 F.3d 775, 783 (7th Cir. 2016), *cert.*

*denied sub nom. Montana v. Werlich*, 137 S. Ct. 1813, 197 L. Ed. 2d 758 (2017), (*citing Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012)).

Here, Petitioner's claims that his conviction and sentence were a result of fraud and collusion with a biased judge do not fall within the § 2255(e) savings clause. He does not rely on a new statutory rule, or a new rule at all, and has presented no argument for why his claim would not have been able to proceed under § 2255. Moreover, at least part of Petitioner's argument has been raised in his direct appeal and his § 2255 motion. *See United States v. Faul*, 748 F.2d 1204, 1210 (8th Cir. 1984) (addressing and rejecting on direct appeal Petitioner's argument that the district judge should have recused himself from the criminal case); *Von Kahl v. United States*, 242 F.3d 783, 793 (8th Cir. 2001) (affirming the judgment of the district court denying Petitioner's § 2255 motion, and finding that Petitioner's claims of judicial bias were meritless, as his "arguments for disqualification neither constitute reasonable bases to question the district judge's impartiality, *see* 28 U.S.C. § 455(a), nor meet the" standard set forth in *Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147 (1994))). While Petitioner no doubt disagrees with these decisions, § 2255 is not inadequate or ineffective merely because a court finds that a claim under that section would lack merit. *See Brown v. Caraway*, 719 F.3d 583, 597 (7th Cir. 2013) ("A motion under § 2255 could reasonably be thought "inadequate or ineffective to test the legality of [the prisoner's] detention" if a class of argument were categorically excluded, but when an argument is permissible but fails on the merits there is no problem with the adequacy of § 2255."); *Taylor v. Gilkey*, 314 F.3d 832, 835 (7th Cir. 2002) (the savings clause is concerned with "procedures rather than outcomes"). Additionally, as the Judgment issued in Petitioner's criminal case cannot be attacked in this proceeding, the Court has not erred in relying on it in the

Court's decision here.  Accordingly, Petitioner is not entitled to any relief stemming from his arguments that his criminal judgment was obtained by fraud or collusion.

**D. Petitioner is Not Entitled to Relief on His Claims Relating to the Authority of the Parole Commission and the Retroactivity of the Relevant Statutes and Regulations.**

Petitioner's remaining arguments center around the retroactivity of statutes and regulations that were promulgated after his sentence and initial parole hearing.  In his Rule 59(e) Motion, Petitioner claims that "[t]he court manifestly erred by the wholesale disregard, misapplication and failure to recognize and apply controlling supreme court and circuit court precedent to a decisive issue."  Rule 59(e) Mot. at 30 (Doc. 17).  Petitioner's argument centers on Respondent's statement in his Response that the "altered 'two-thirds date is not a release date, but a record review date' relative to which the [Parole Commission] 'will hold a hearing prior to the two-thirds date and [then] make a determination on parole.'"  *Id.* (citing Resp. at 6 (Doc. 9)).  Petitioner argues that this statement "compelled him to address the [Parole Commission's] authority (as alleged by Respondent) through its series of NOAs and hearings" and "its continuing authority relative to Petitioner."  *Id.*

Petitioner's argument appears to stem from the statutory changes in the parole statutes and regulations after his sentence was imposed.  Petitioner was sentenced on June 2, 1983, and his sentence imposed was pursuant to 18 U.S.C. § 4205(b)(2), which provides for release on parole "… at such time as the [United States Parole Commission] may determine."  After he was sentenced, Congress passed the Sentencing Reform Act of 1984 ("SRA").  *See* Pub.L. No. 98–473, 98 Stat.1987 (1984).  Amendments to the law were again passed in 1987.  "The 1984 version of § 235(b)(3) required that parole be set within the parole guideline range, whereas the 1987 version allowed the Parole Commission, as here, once again to proceed under 18 U.S.C.

§ 4206 and exceed the parole guideline range." *Norwood v. Brennan*, 891 F.2d 179, 181 (7th Cir. 1989). Petitioner argues that, under the plain text of the 1987 amendments, it should have only applied to offenses committed *after* its enactment. Pet. Mot. at 32 (Doc. 17). Accordingly, Petitioner argues that the 1987 amendments do not apply to him, and that he was "not subject to the [Parole Commission] after the terms of the original § 235(b)(3) had passed." *Id.*

However, despite Petitioner's insistence to the contrary, Petitioner's arguments challenging the Parole Commission's authority over him have already been addressed by other courts. *See, e.g., Von Kahl v. United States*, 321 Fed. Appx. 724, 728–29 (10th Cir. 2009). This Court is not required to rehash arguments on habeas petitions that have already been litigated by Petitioner. 28 U.S.C. § 2244(a) ("No circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus"). It is clear that Petitioner does not agree with the decision of the previous courts, but that does not mean it was not addressed and does not entitle him to further review.

Moreover, as Petitioner notes, the Seventh Circuit held that the 1987 amendments do apply retroactively to prisoners such as Petitioner. *Norwood v. Brennan*, 891 F.2d 179, 182 (7th Cir. 1989) ("[W]e hold that the parole transition sections of the 1987 amendments must apply to offenses committed prior to the enactment of the Act."). The *Norwood* court found that there was no *ex post facto* violation in applying these provisions retroactively, because they reinstated the standard in effect at the time of the petitioner's offense and sentencing. This finding is equally true in the case here.

Petitioner, both in his Reply brief, and in the instant motion, argues that *Norwood* was wrongly decided. *See, e.g.,* Reply at 49, n.23 (Doc. 14-1); Rule 59(e) Mot. at 32-33 (Doc. 17). He provides a number of citations to cases that addressed issues of retroactivity to demonstrate why *Norwood* was wrongly decided, including *Landgraf v. USI Film Products*, 511 U.S. 244 (1994) (holding that the amendments to Title VII in the Civil Rights Act of 1991 did not apply retroactivity to cases pending on appeal when the statute was enacted), and *I.N.S. v. St. Cyr,* 533 U.S. 289, 121 S. Ct. 2271, (2001) (holding amendments to immigration law, which repealed a form of discretionary relief from deportation, did not apply to aliens "whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect"). However, these cases concerned statutes that, if applied retroactively *changed* the consequences of actions the parties had already taken. By contrast, the decision in *Norwood* relied on the fact that the 1987 amendments *reinstated* the standard in effect at the time of petitioner's offense and sentencing. These cases did not purport to abrogate *Norwood* or address the retroactivity of the 1987 amendments to the SRA. Moreover, this Court is bound by the decisions of the Seventh Circuit and must deny this claim.

Petitioner also argues that his Reply contained two substantively different arguments related to *ex post facto* clause violations. First, Petitioner's reply argued that the August 1984 Amendments to 28 C.F.R. §§ 2.12 and 2.14 violate the Constitution's ex post facto clause as applied to petitioner. These amendments changed the date of his reconsideration hearing from 10 to 15 years from the date of his initial parole hearing. At the time of Petitioner's conviction in June 1983, and initial parole hearing in June 1984, the regulations concerning parole reconsideration hearings, 28 C.F.R. §§ 2.12(b) and 2.14(c), provided for a ten-year

reconsideration period. Effective October 1, 1984, the regulations were amended to read:

"Following initial hearing, the Commission shall (1) set a presumptive release date (either by

parole or by mandatory release) within fifteen years of the hearing; (2) set an effective date of

parole; or (3) continue the prisoner to a fifteen year reconsideration hearing pursuant to

§ 2.14(c)." *See* 49 FR 34208–01, 1984 WL 117501 (Aug. 29, 1984).

      Petitioner argues this change from a ten-year reconsideration hearing to a fifteen-year

reconsideration hearing violated the E*x Post Facto* Clause. The Constitution prohibits Congress

from passing any *ex post facto* law. U.S. Const. art. 1 § 9, cl 3. "One function of the *Ex Post*

*Facto* Clause is to bar enactments which, by retroactive operation, increase the punishment for a

crime after its commission. . . Retroactive changes in laws governing parole of prisoners, in

some instances, may be violative of this precept." *Garner v. Jones*, 529 U.S. 244, 249, 120 S. Ct.

1362, 1367 (2000) (internal citations omitted). A statute violates the *Ex Post Facto* Clause when

"it produces a sufficient risk of increasing the measure of punishment attached to the covered

crimes." *California Dep't of Corr. v. Morales*, 514 U.S. 499, 509, 115 S. Ct. 1597, 1603, 131 L.

Ed. 2d 588 (1995). However, "[w]hen the rule does not by its own terms show a significant risk

[of increased punishment], [the petitioner] must demonstrate, by evidence drawn from the rule's

practical implementation by the agency charged with exercising discretion, that its retroactive

application will result in a longer period of incarceration than under the earlier rule." *Garner*,

529 U.S. at 245.

      Here, Petitioner has not shown that the amendments to the regulations produced a

"significant risk" of increased punishment. Petitioner has had the opportunity to attend statutory

interim hearings every 24 months. *See* 28 C.F.R. § 2.14(a)(1)(ii). At these hearings, the Parole

Commission has the authority to move up the date of the reconsideration hearing in appropriate

circumstances. *See* 28 C.F.R. § 2.14(a)(2)(ii). Petitioner has waived these statutory interim hearings, as well as the reconsideration hearing, since 1997. According to Petitioner, he has been "forced" into this waiver because the Parole Commission has "refused" to provide him with records. Reply at 32 (Doc. 14-1). Nevertheless, these hearings have been available—and continue to be available should Petitioner request one. Accordingly, the Court finds that the 1984 amendments did not "by its own terms show a significant risk" of increased punishment. *See also Harper v. Sanders*, No. 10-CV-01256-MSK, 2011 WL 2940641, at *13 (D. Colo. July 21, 2011) (finding that "[t]he amendment, as written, does not, and did not, pose a significant risk of lengthening" the term of imprisonment because the petitioner had been afforded "opportunities to demonstrate a change in circumstances that would warrant an earlier reconsideration date"), *aff'd*, 503 Fed. Appx. 564 (10th Cir. 2012). Nor has Petitioner shown that the application of the fifteen-year reconsideration rule in his case provided for a significant risk of a longer period of incarceration. Petitioner has presented no evidence that he would have actually been released earlier if the ten-year reconsideration rule had applied. Moreover, if Petitioner had a basis for earlier release, he could have presented it at a statutory interim hearing.

Petitioner's final additional argument from his Reply is that the BOP violated due process and the *Ex Post Facto* clause by applying 18 U.S.C. § 3585(b) and BOP Program Statement 5880.30, when it changed his mandatory release date to require him to serve 40 years prior to release instead of 30. Section 3585(b), however, only governs credit for prior custody. There appears to be no dispute that Petitioner was accurately credited for his time served in pretrial custody.

The BOP's calculation of Petitioner's mandatory release date, rather, was done pursuant to the statutory language of § 4206(d). The BOP has always provided the Parole Commission

with such calculations. *See Gomez v. U.S. Parole Comm'n*, No. CIV. 05-3829 (RBK), 2006 WL 2465628, at *7 (D.N.J. Aug. 19, 2006), *aff'd*, 246 Fed. Appx. 102 (3d Cir. 2007) ("The [U.S. Parole Commission] relies on the BOP to compute a federal prisoner's sentence, which would include certain dates pertinent to the [U.S. Parole Commission's] activities, such as, the parole eligibility date, the two-thirds date, and mandatory release date."). Moreover, in Petitioner's Reply, he generally agreed that there was "no dispute" that the BOP has "a broad delegated authority to calculate federal sentences." Reply at 37 (Doc. 14-1). And, it was the BOP that calculated Petitioner's previous two-thirds or mandatory release date for the Parole Commission. *See* Resp. App. at pp. 11 (Doc. 9-2) (Petitioner's 1986 Notice of Action, noting that the two-thirds date (or mandatory release date) was computed by the Bureau). Pursuant to §§ 4205 and 4206, it is up to the Parole Commission to adopt these calculations and ultimately determine when a prisoner subject to its jurisdiction is eligible for parole, but the BOP is within its authority to calculate this date.

When the BOP recalculated his sentence, it did so under the direction of BOP Program Statement 5880.30, which was issued in 1993. While this manual was issued after Petitioner's sentencing and after his initial parole hearing, Petitioner has not demonstrated that Program Statement 5880.30 changed the law, so cannot show that there was an *ex post facto* violation. As the Court found above, and in its prior order, the proper calculation of Petitioner's mandatory release date is found within the text of the § 4206(d) itself. BOP's Program Statement 5880.30 is merely a manual explaining precisely how to calculate the sentences for inmates sentenced prior to the effective date of the Comprehensive Crime Control Act of 1984, such as Petitioner. The previous calculations of the BOP finding that Petitioner need only serve 30 years before reaching his mandatory release date were incorrect. And, as explained in the Court's January Order (Doc.

15), Petitioner does not have any entitlement to release on an incorrectly calculated date. *See, e.g., Jago v. Van Curen*, 454 U.S. 14, 17–19, 102 S. Ct. 31 (1981) (rescission without hearing of prisoner's promised parole prior to his release held not violative of due process); *Burgesss v. Sabol*, No. CIV A. 09-40045 MBB, 2010 WL 4103708, at *6 (D. Mass. Oct. 18, 2010) ("[T]he general rule" is that "an offender's expectation and reliance interests in sentence mistake cases are ordinarily trumped by the strong public interest in crime prevention and punishing criminals.") (*citing Wells v. United States*, 802 A.2d 352, 354 (D.C. 2002)); *Davis v. Moore*, 772 A.2d 204, 219 (D.C. 2001) ("An expectation of early release from prison (or from service of a sentence) that is induced not by a valid statute or regulation but by the mistaken representations of officials does not without more give rise to a liberty interest entitled to protection under the Due Process Clause.").

In any event, Petitioner does not have *any* entitlement to immediate release on his mandatory release date, which only creates a presumption of release. The Parole Commission retains authority not to release a prisoner subject to mandatory parole "if it determines that he has seriously or frequently violated institution rules and regulations or that there is a reasonable probability that he will commit any Federal, State or local crime." 18 U.S.C. § 4206(d). Because Petitioner's sentence was imposed pursuant to § 4206(d), and because he is serving a life sentence, Petitioner can have no entitlement to release until and unless the Parole Commission makes the decision to release him.

## CONCLUSION

For the reasons set forth above, Petitioner Yorie Von Kahl's Rule 59(e) Motion (Doc. [17]) is GRANTED IN PART on the ground that the additional arguments presented in his *pro se* Reply (Doc. [14-1]) should have been construed as a motion to amend and the denial of these

claims more thoroughly addressed. The remaining grounds in his Rule 59(e) Motion are

DENIED. The Court finds that Petitioner is still not entitled to relief on the additional claims

raised in his Reply. Accordingly, the Judgment is VACATED, and the Clerk is DIRECTED to

enter an Amended Judgment DENYING both Petitioner's Petition for Writ of Habeas Corpus

under 28 U.S.C. § 2241 (Doc. [1]) and what the Court now construes as Petitioner's Motion to

Amend contained within his Reply (Doc. [14-1]).


Entered on this 21st day of August, 2019.

/s/ James E. Shadid
James E. Shadid
United States District Judge